UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
KENNETH HERNANDEZ, individually and
on behalf of all others similarly situated,

                Plaintiff,

  -against-

AUTOZONE, INC.,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 1:15-cv-05593-FB-RLM

*Appearances*
*For the Plaintiffs*:
EDWIN J. KILPELA, JR.
KEVIN ABRAMOWICZ
STEPHANIE K. GOLDIN
Carlson Lynch Sweet Kilpela &
Carpenter, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

JOHN DOMENICK ZAREMBA
Zaremba Brownell & Brown PLLC
40 Wall Street, 27th Floor
New York, NY 10005

*For the Defendants*:
CHRISTOPHER F. WONG
DAVID RAIZMAN
EVAN BENJAMIN CITRON
Ogletree Deakins Nash Smoak &
Stewart, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071

**BLOCK, Senior District Judge:**

      Kenneth Hernandez brings a putative class action against AutoZone, Inc. ("AutoZone") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and its implementing regulations. He claims primarily that AutoZone's centralized maintenance policies are inadequate to detect and remedy

accessibility barriers in its parking lots and walkways, and he seeks declaratory and injunctive relief. Hernandez now moves for class certification under Federal Rule of Civil Procedure 23(b)(2), and AutoZone opposes the motion. For the reasons discussed below, the motion for class certification is granted.

# I

"A district judge is to assess all of the relevant evidence admitted at the class certification stage[.]" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (hereinafter *In re IPO*). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)). The Court must "receive enough evidence, by affidavits, documents, or testimony" to be satisfied that each requirement has been met, and it must resolve any relevant factual disputes, even on issues that overlap with the merits of the underlying claim. *See In re IPO*, 471 F.3d at 41.[1]

## A. Named Plaintiff

Hernandez, a U.S. military veteran and former police officer, has relied on a wheelchair for mobility since a 2014 car accident left him paralyzed from the waist

---

[1] Acceptable "testimony" includes deposition testimony. *See, e.g.*, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (affirming district court's grant of motion for class certification based in part on plaintiffs' declarations and deposition testimony).

down. *See* Pl.'s Mem. in Support of Class Certification, Ex. E (Hernandez Dep.) at 13:25-14:18, 21:6-24:10, 29:14-31:20. Both before and after his accident, Hernandez was a repeat visitor to an AutoZone store in Brooklyn. *Id.* at 63.

The first time he visited the store after his accident, he faced several mobility challenges. There was no accessible parking space wide enough for him to unload his wheelchair from the van in which he rode, so he had to unload in the middle of the parking lot. *Id.* at 75:18-82:11. After he unloaded his wheelchair, the parking lot and the sidewalk were too steeply sloped for him to propel his wheelchair up them. *Id.* at 82:12-83:24. He therefore required the assistance of his fiancé, who had driven the van that day. *Id.* at 83:16-24, 77:15-17. When he reached the entrance, he was unable to get through because it was too narrow and the door did not open automatically. *Id.* 84:25-87:25. Hernandez returned to the store on a later occasion and faced similar difficulties. *Id.* at 101:17-106:6. He plans to return to the Brooklyn AutoZone in the future despite these difficulties because it is his "local auto parts store." *Id.* at 116:1-8, 93:7-10. Hernandez also plans to purchase a car in the future, but he does not own one now. *Id.* at 48:22-49:9.

**B. ADA Violations**

Hernandez alleged in his Complaint that his counsel's investigators identified multiple violations of the ADA at AutoZone locations, including parking lots and sidewalks with slopes steeper than permitted by the Department of Justice's ADA

3

Accessibility Guidelines ("ADAAG"), a lack of parking spaces designated as van accessible, and purportedly accessible parking spaces with aisles that were narrower than the required 60 inches. In addition to the Brooklyn location visited by Hernandez, the investigators allegedly identified fifteen AutoZone locations in three states with similar ADA compliance deficiencies. *See* Compl. ¶¶ 23(a)-(o).[2]

**C. AutoZone Policies and Practices**

Hernandez submitted the deposition testimony of AutoZone Architect George Callow. According to Callow, the following policies and practices apply to AutoZone stores across the nation. AutoZone representatives oversee each stage of the construction process to ensure that parking lots and sidewalks are ADA compliant. Pl.'s Mem. Ex. B (Callow Dep.) at 27:17-29:10, 30:19-22, 34:17-35:17. When construction is complete, general contractors certify that the site matches the original ADA-compliant construction plans. *Id.* at 37:15-38:10. However, after construction, various environmental factors such as weather and earthquakes can change the slope of the parking lots and sidewalks. *Id.* at 63:4-64:3, 65:20-22. Nonetheless, AutoZone construction personnel do not measure the slope of parking lots or sidewalks after they have been built. *Id.* at 38:11-15.

Hernandez also submitted the deposition testimony of David Cooper, AutoZone

---

[2] Although Hernandez's deposition testimony supports his allegations regarding the Brooklyn AutoZone location, neither party has submitted evidence regarding specific access barriers at the other AutoZone locations mentioned in the Complaint.

4

Senior Maintenance Operations Manager. According to his testimony, post-construction changes in store property are monitored by AutoZone maintenance technicians, who visit each store every six weeks. *Id.* Ex. C (Cooper Dep.) at 13:4-8, 71:8-14. Using an "E-Zap Worksheet" as a guide, they inspect the property, including the parking lots and sidewalks, for conditions requiring repairs. *Id.* at 14:8-15, Ex. D (E-Zap Worksheet). Regular inspections of substantially similar scope are conducted by Maintenance Managers, Store Managers, and District and Regional Managers. *See* Def.'s Callow Decl. ¶¶ 10-12. AutoZone also operates a "Maintenance Resource Center," which receives reports from maintenance technicians and from the general public regarding any need for repairs to AutoZone facilities and oversees many of those repairs. *Id.* ¶ 13. From September 2013 to April 2017, the work of AutoZone maintenance technicians resulted in an average of 9 parking lot replacements per month. *Id.* ¶ 9.

The E-Zap Worksheet does not direct maintenance technicians to measure the slope of parking lots or sidewalks. *See generally* E-Zap Worksheet. If a visual inspection by the maintenance technician reveals sufficient deterioration in parking lots and sidewalks, AutoZone will replace them using the original construction plans, presumably returning the property to full ADA compliance. *See* Cooper Dep. at 49:4-51:23, 56:8-18. Replacement occurs generally every 15 to 20 years. *Id.* at 54:22-55:15. However, during the time between original construction and replacement, AutoZone

does not measure the slope of its parking lots or sidewalks to ensure ADA compliance. *Id.* at 31:6-23, 39:11-41:24. Moreover, maintenance technicians are not provided with ADA slope requirements, trained to measure slope gradients, or provided with tools to perform such measurements. *Id.* at 39:7-20, 56:13-58:9. They may visually observe changes in parking lot and sidewalk slope gradients, although they are not specifically directed to do so. *Id.* at 67:6-69:12.

**D. Procedural History**

Hernandez sued AutoZone on behalf of himself and others similarly situated under Title III of the ADA, 42 U.S.C. §§ 12182(a) and (b)(2)(A)(iv), claiming that (1) the parking lots and walkways at AutoZone stores were not accessible to individuals with disabilities, and (2) AutoZone's centralized policies regarding ADA compliance were inadequate to identify and remedy accessibility problems. He sought a declaration that AutoZone's facilities were not fully accessible in violation of the ADA and a permanent injunction directing AutoZone to (1) take all necessary steps to make its facilities ADA compliant, (2) change its corporate policies to ensure ongoing ADA compliance, and (3) directing Plaintiffs to monitor AutoZone facilities for satisfaction of such an injunction.

Hernandez moves to certify a class under Rule 23(b)(2) of "all persons with qualified mobility disabilities, who have visited or will visit any AutoZone store where Defendant AutoZone, Inc. owns, controls and/or operates the parking facility." Pl.'s

6

Mem. at 8.[3] He seeks declaratory and injunctive relief on behalf of the class.

**II**

As an initial matter, the Court must resolve AutoZone's challenge to Hernandez's standing to seek injunctive relief. In a class action, the named plaintiff must establish individual standing to seek the requested relief. *States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007). Hernandez has individual standing because he showed that (1) he faced access barriers at the Brooklyn AutoZone, (2) those barriers persisted because AutoZone's central policies were inadequate to detect and remedy them, and (3) the access barriers could be redressed with an injunction requiring AutoZone to correct them and to change its centralized policies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating that standing requires (1) an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable decision).

AutoZone argues that Hernandez lacks standing because he does not own a car and he has no specific plans to visit the Brooklyn AutoZone store in the future. Both arguments are without merit. For prospective injunctive relief, the plaintiff must show a "real or immediate threat that the plaintiff will be wronged again . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Hernandez can and did visit the Brooklyn

---

[3] The Court adopts Hernandez's class definition, which AutoZone does not explicitly contest.

AutoZone despite not owning a car, and, when he did, he faced access barriers. According to his testimony, he always went to the Brooklyn AutoZone store when he needed to purchase something for an automobile, Hernandez Dep. at 116:21-24, and his fiancé owned a car, *id.* at 48:13-18. Hernandez submitted evidence that AutoZone's centralized policies are inadequate to detect and remedy access barriers that violate the ADA. It is therefore sufficiently "likely," for purposes of standing, that Hernandez will be exposed to similar access barriers in the future if those policies do not change. *E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). It makes no difference that Hernandez has not shown precisely when he will return or that he does not personally own an automobile.

AutoZone also argues that Hernandez lacks standing because he has visited only the Brooklyn AutoZone store and not the other AutoZone locations mentioned in his Complaint. This argument confuses class standing with individual standing. "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citations omitted) (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); then quoting *Gratz v. Bollinger*, 539 U.S. 244,

267 (2003)). A named plaintiff does not require individual standing to bring each class member's claim in order to establish "class standing." *Id.* at 158-62.

Hernandez has class standing. First, as discussed above, he has faced access barriers as a result of AutoZone's alleged failure to detect and remedy them. Second, access barriers encountered by other class members at other AutoZone locations "implicate[] 'the same set of concerns'" as the ones Hernandez encountered: whether AutoZone's centralized policies are adequate to detect and remedy violations of the ADA. AutoZone's standing challenge is without merit.[4]

### III

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of [Federal Rule of Civil Procedure] 23(a) of numerosity, commonality, typicality, and adequacy." *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). It must then consider whether the proposed class conforms to one of the categories listed in Rule 23(b). *Id.* Rule 23 demands a "rigorous analysis." *In re IPO*, 471 F.3d at 33 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) ("The

---

[4] AutoZone also argues that its maintenance obligations under 28 C.F.R. § 36.211(a) do not require it to detect and remedy new access barriers of the type described in Hernandez's Complaint. This argument is more properly raised in a motion to dismiss under Rule 12(b)(6) or 12(c) or a motion for summary judgment under Rule 56. The Court considers the argument here only to the extent that it impacts class certification.

9

Rule imposes stringent requirements for certification that in practice exclude most claims.").

## A. Rule 23(a)(1): Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." A class with more than 40 members presumptively satisfies the numerosity requirement. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Court does not require evidence of the exact class size or the identity of its members. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Hernandez relies on data from publicly available sources to argue that more than 40 people have or will visit AutoZone stores. According to 2010 Census data, 3.6 million (1.5 percent) Americans use a wheelchair and about 11.6 million (4.8 percent) use a cane, crutches, or a walker. *See* U.S. Department of Commerce, Report Number P70-131, Americans with Disabilities: 2010 at 8 (July 2012).[5] AutoZone owns 2,888 of the 6,003 store locations it operates in the United States. *See* AutoZone, Inc., SEC Form 10-K at 18 (Oct. 24, 2016).[6] Finally, according to AutoZone's website,

---

[5] Available at https://www2.census.gov/library/publications/2012/demo/p70-131.pdf.

[6] Available at http://services.corporate-ir.net/SEC/Document.Service?id=P3VybD1hSFIwY0RvdkwyRndhUz UwWlc1cmQybDZZWEprTG1OdmJTOWtiM2R1Ykc5aFpDNXdhSEEvWVdOMGFXOXVQV kJFUmlacGNHRm5aVDB4TVRnMU1qZ3lPU1p6ZFdKemFXUTlOVGM9JnR5cGU9MiZmbj1 BdXRvWm9uZUluYy5wZGY=.

10

AutoZone stores receive about six million customer visits per week.[7] If Americans who use a wheelchair, cane, crutches, or a walker visit AutoZone locations even 0.1 percent as often as the general public, then nearly 450 Americans with mobility disabilities visit AutoZone stores in a single week. The Court may take judicial notice of the foregoing sources of data, which together show that there are enough class members to satisfy the numerosity requirement for class certification. *See Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (holding that district court did not abuse discretion in finding numerosity based on the number of Americans with disabilities and the number of defendant's stores); *see also Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 147 (E.D.N.Y. 2012) ("[T]he Court may make reasonable inferences from available facts[.]").

## B. Rule 23(a)(2) and (3): Commonality/Typicality

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(3) requires a plaintiff to show that his or her claims "are typical of the claims . . . of the class." The commonality and typicality requirements "tend to merge" into a single inquiry: "[W]hether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*,

---

[7] *See* Shop Referral, https://www.autozonepro.com/info/about/shop-referral.jsp (last visited January 23, 2018).

564 U.S. 338, 349 n.5 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

The commonality/typicality test has traditionally been described as "easily satisfied" by a single common issue. 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.23[2] (3d ed. 1997); *see also* 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (4th ed. 2002) ("[T]here need only be a single issue common to all members of the class. Therefore, this requirement is easily met in most cases." (footnotes omitted)). Nonetheless, the plaintiff must demonstrate that "the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 157). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Rather, the class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Hernandez argues that there is a single factual question common to the class: [w]hether and to what extent Defendant's policies and practices have failed to identify and promptly remediate ADA violations . . . ." Pl.'s Mot. at 14. District courts outside the Second Circuit have certified classes based on similar questions challenging company-wide compliance policies. *See, e.g.*, *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) ("Cases

challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)"); *Heinzl v. Cracker Barrel Old Country Stores, Inc.*, 2016 WL 2347367, at *19-20 (W.D. Pa. Jan. 27, 2016), *report and recommendation adopted as modified* 2016 WL 1761963 (W.D. Pa. Apr. 29, 2016).

Here, Hernandez has shown that AutoZone applies a uniform set of maintenance policies to all of the stores it owns and that these policies do not specifically address ADA compliance. If these policies fail to detect and remedy ADA violations, then class members who were exposed to the violations have "suffered the same injury." *Dukes*, 564 U.S. at 350. Thus, whether AutoZone's policies result in ADA violations is capable of classwide resolution, and "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Hernandez satisfies the commonality and typicality requirement of Rules 23(a)(2) and (a)(3).

AutoZone devotes several pages of its Opposition to the argument that Title III and one of its implementing regulations, 28 C.F.R. § 36.211 (hereinafter "Section 211"), do not require it to detect and remedy ADA violations of the type alleged in the Complaint. *See* Def.'s Opp. at 8-13. In doing so, AutoZone simply underscores the existence of a common question of law. Whether Title III and Section 211 require AutoZone to take reasonable measures to identify and remove accessibility barriers that

arise as a result of natural deterioration is a common question of law, the resolution of which will resolve a central issue of the class "in one stroke." *Dukes*, 564 U.S. at 350.

AutoZone also argues that Hernandez fails to satisfy the commonality and typicality requirements because he offers no proof that (1) access barriers exist anywhere other than the Brooklyn store or (2) that the alleged ADA violations arose *because of* and not simply *in spite of* AutoZone's maintenance policies.

As to AutoZone's first argument, the Supreme Court in *Dukes* discussed the plaintiff's burden of proof when seeking class certification on the basis of a company-wide policy. It acknowledged that class action discrimination claims may present a "conceptual gap" between an individual's claim of discrimination and "the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Dukes*, 564 U.S. at 353 (citing *Falcon*, 457 U.S. 147, 157–58 (1982)). The Court identified two ways to bridge that "conceptual gap." First, it can be bridged by proof that the defendant used discriminatory procedures that affected every member of the class. *Id.* Second, it can be bridged by proof that the defendant "operated under a general policy of discrimination." *Dukes*, 564 U.S. at 353.

Here, Hernandez has submitted proof, through deposition testimony, that AutoZone's company-wide maintenance procedures have no mechanism for identifying

and remedying accessibility barriers in its parking facilities despite its knowledge that these accessibility barriers arise through the natural deterioration of surfaces and building materials. He has therefore shown that the defendant used discriminatory procedures affecting each member of the proposed class. This proof is sufficient to satisfy Hernandez's burden at the class certification stage. Hernandez is not required to prove at this stage that each potential class member encountered access barriers.

AutoZone's causation argument misconceives Hernandez's claim. Hernandez does not claim that AutoZone's policies themselves cause ADA violations but that AutoZone's policies fail to detect and remedy accessibility barriers created by natural causes. It is thus not relevant that Hernandez does not submit proof that AutoZone's policies cause the accessibility barriers.

## C. Rule 23(a)(4): Adequacy

A putative class plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) encompasses two requirements. First, class counsel must be "qualified, experienced, and generally able to conduct the litigation," and second, there may be "no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

AutoZone does not challenge the qualifications of class counsel. Rather, it argues that there is a conflict because class members will prefer to combine their claims

15

for declaratory and injunctive relief with their claims for damages. However, money damages are not available under Title III of the ADA. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004). Other class members' interest in bringing nonexistent damages claims does not present a conflict.

**D. Rule 23(b)(2): Class Type**

Certification is appropriate under Rule 23(b)(2) if the opposing party "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

The proposed class meets the requirements of Rule 23(b)(2). Because AutoZone follows the same maintenance procedures for all the stores it owns, the challenged conduct applies generally to the class. And, similarly, injunctive or declaratory relief regarding AutoZone's maintenance policies would be appropriate for the class as a whole.

Citing *Castaneda v. Burger King Corp.*, 264 F.R.D. 557 (N.D. Cal. 2009),

16

AutoZone argues that certification under Rule 23(b)(2) is not proper because class members' claims will require individualized proof of ADA violations at nearly 3,000 separate AutoZone stores and separate injunctions to remedy those violations. However, *Castenada* is inapposite because the plaintiff there did not challenge a centralized policy of the defendant. 264 F.R.D. at 567-68. Moreover, Hernandez and the proposed class could conceivably prove the inadequacy of AutoZone's centralized policies without submitting proof of ADA violations at every AutoZone store, and injunctive relief regarding those policies need not be specific to each store.

### III

The Court concludes that Hernandez has met the requirements of Rule 23. Accordingly, the motion for class certification is GRANTED.

**SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 27, 2018