UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
KENNETH HERNANDEZ, individually and on                           :
behalf of all others similarly situated,                         :
                                                                 :
                        Plaintiff,                               :
                                                                 :    15-CV-05593 (FB-RLM)
        v.                                                       :
                                                                 :
AUTOZONE, INC.,                                                  :
                                                                 :
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------x

## ORDER

Plaintiff Kenneth Hernandez ("Plaintiff"), on behalf of himself and the Class, and defendant AutoZone, Inc. ("AutoZone"), through their respective counsel, hereby submit the following Proposed Order:

## INTRODUCTION

This matter comes before the Court on the joint motion of the parties under Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure to decertify the nationwide class of "all persons with qualified mobility disabilities, who have visited or will visit any AutoZone store where Defendant AutoZone, Inc. owns, operates and/or controls the parking facility" that was certified by the Court on February 27, 2018. (ECF Doc. No. 104, the "Class Certification Order.")

Based on the factual and legal findings outlined below, the Court grants the motion.

## FACTUAL FINDINGS

1.  On September 28, 2015, Plaintiff, on behalf of himself and a class of similarly-situated persons with mobility impairments, brought a putative class action against AutoZone,

alleging that AutoZone failed to maintain the accessibility of the parking lots adjacent to and serving its various stores. (ECF Doc. No. 1 ¶ 23 at 5.)

2. On May 4, 2017, Plaintiff moved pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure to certify a class "all persons with qualified mobility disabilities, who have visited or will visit any AutoZone store where Defendant AutoZone, Inc. owns, operates and/or controls the parking facility." (ECF Doc. No. 37 at 8.) In support of that motion, Plaintiff asserted, among other things, that AutoZone established and implemented a "maintenance policy" that was inadequate to satisfy the asserted obligation under 28 C.F.R. § 36.211 to maintain the accessibility of the parking lots in locations where it owned or controlled the parking lots. (*Id.* at 16.) AutoZone opposed certification, arguing, among other things, that the Plaintiff did not establish commonality, which "requires the Plaintiff to demonstrate that the class members have suffered the same injury" and did not present a "common issue, the answer to which would resolve an issue that is central to the validity of each one of the claims in a single stroke." (ECF No. 38 at 24, 28, quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).)

3. On February 27, 2018, the Court granted Plaintiff's motion and entered the Certification Order certifying a nationwide class of "all persons with qualified mobility disabilities, who have visited or will visit any AutoZone store where Defendant AutoZone, Inc. owns, operates and/or controls the parking facility." (Class Certification Order at 6, 17.) The Court found "commonality" and "typicality" under Rule 23(a)(2) and (a)(3) in "a single factual issue common to the class: [w]hether and to what extent Defendant's policies and practices have failed to identify and promptly remediate the violations…." (*Id.* at 12 (citing ECF No. 37 at 14).)

4. Plaintiff engaged two expert witnesses and took additional discovery regarding the parking facilities at Defendants' stores. One of Plaintiff's experts, an expert in disability access

and identifying barriers to access, trained a team of inspectors that took a minimum of six slope measurements at each of 150 randomly-selected stores, approximately 5% of the stores whose parking lots AutoZone owns. By randomly selecting that number of stores' parking lots, Plaintiff's second expert, a statistical expert, opined that he would be able to make reliable, statistically-sound predictions about the slopes at the remaining, uninspected stores.

5. As a result of that discovery, and as a result of intervening legal developments (discussed *infra*), Plaintiff determined he would face significant hurdles regarding several of the bases for both class certification and the proof he had intended to offer at trial. The Court agrees.

6. First, the measurements obtained during the inspections undertaken by Plaintiff's expert demonstrated that the majority of AutoZone properties did not have non-conforming slope measurements and, therefore, the likelihood that a class member would encounter a barrier to access at an AutoZone property is less likely than not. AutoZone asserts, and Plaintiff, only for the purposes of settlement, does not dispute, that applying the construction tolerances espoused by its disability access expert, Bill Hecker, AIA, only 20 of the 150 inspected stores (less than one in seven) had even a single, non-conforming slope measurement. This Court need not accept or reject the tolerances asserted by AutoZone's expert to find, based on Plaintiff's investigation of the 150 predetermined stores, that a person using a wheelchair visiting a randomly-selected AutoZone store is more likely to encounter a parking lot without even a single non-conforming slope measurement than not.

7. AutoZone asserts, and Plaintiff does not dispute, that nothing in Plaintiff's experts' reports make any finding or rendered any opinion about the adequacy of AutoZone's maintenance policy that was the subject of the class certification motion. During the pendency of this matter, AutoZone has modified its policies to more closely conform to the maintenance policies

3

recommended by the United States Department of Justice in its 2009 publication "Maintaining Accessible Features in Retail Establishments."

8. The parties reached a comprehensive settlement of this action that is expressly contingent on the decertification of the class. The terms of the settlement will also involve AutoZone's remediation of twenty stores that have at least one non-conforming measurement, Plaintiff's general release of all claims and Plaintiff's counsel's recovery of attorneys' fees and costs, though at a substantial discount from the amount of fees and expenses actually incurred in this matter.

9. The grant of Defendant's motion to decertify the class, which Plaintiff does not oppose, was brought as an express term of their settlement. (ECF No. 104 at 1.)

## CONCLUSIONS OF LAW

1. As a threshold matter, the Court may appropriately reexamine its certification order at this or any stage of the proceedings. "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). In particular, "a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *18 (S.D.N.Y. Aug. 8, 2017) (quoting *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982)); *Wu v. Pearson Educ. Inc.*, 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012) ("A district court may—and should—decertify a class when the standards of Rule 23 have not been met."). The district court "is afforded broad discretion in class certification questions" and "has the ability" to, among other things, "decertify the class whenever warranted." *MacNamara v. City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011) (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001)). "Courts faced with a motion to decertify must also take account of the progression of the

litigation." *Wu*, 2012 WL 6681701, at *4 ("While district courts have broad discretion over class certification, we are 'required to reassess class rulings as the case develops.'") (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999).

2.  Based on the facts adduced in discovery, including the inspection reports prepared by Plaintiff's accessibility expert, the parties have agreed that decertification is appropriate. The Court agrees. As explained below, the evidence does not support a finding that AutoZone acted or failed to act on grounds generally applicable to the class. Even at stores with individual non-conforming measurements, with the majority of stores demonstrating only conforming measurements when applying the most conservative construction tolerance, there may be no "final injunctive relief or corresponding declaratory relief" that is appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

3.  First, the results of the inspections revealed that non-conformance with the ADA Standards, when applying what AutoZone's expert described as the lowest, widely-accepted construction tolerance of .5% (the reasonableness of which Plaintiff does not contest for the purposes of settlement), non-conforming measurements were found at less than half of the inspected AutoZone stores. When applying the construction tolerances suggested by AutoZone's expert, which this Court neither accepts nor rejects, less than one in seven of the 150 inspected AutoZone stores had even a single measurement that did not conform to the ADA Standards. As a result, Plaintiff cannot establish that a member of the nationwide class is more likely than not to have experiences at AutoZone stores that are typical of the experiences alleged by Plaintiff in this action. Fed. R. Civ. P. 23(a)(3).

4.  Second, certification in this case under Fed. R. Civ. P. 23(b)(2) was based on Plaintiff's allegation that the barriers he experienced were caused by AutoZone's allegedly

5

insufficient "maintenance policy," which Plaintiff alleged applied to all AutoZone stores nationwide. Accordingly, because members of the class were likely to encounter the same similar barriers to those Plaintiff allegedly faced, the Court determined that class certification was appropriate under Fed. R. Civ. P. 23(b)(2) based on Plaintiff's allegations that AutoZone had allegedly "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Because the non-conforming barriers are less widespread than Plaintiff at first believed, Plaintiff will be unable to draw any conclusion from the inspection results regarding the alleged inadequacy of AutoZone's maintenance policy. Neither of Plaintiff's experts reached any such conclusions.

5.  Decertification of the class is also appropriate where, as here, no absent class members will be harmed by decertification. In this case, no absent class members have received notice of the action and none will be bound by the settlement, which will have only Plaintiff's release of claims. Moreover, some absent class members (namely, those who visit the twenty remediated stores) will presumably benefit from the remedial relief the parties have agreed to as part of the settlement. *See*, *e.g.*, *Benavides v. Serenity Spa N.Y., Inc.*, 2018 WL 2383144 (S.D.N.Y. May 25, 2018) (decertifying Rule 23 wage class where class members had not received notice and would not be prejudiced by decertification as they would not be bound by the parties' settlement); *Abels v. JBC Legal Group, P.C.*, 2008 WL 782527, at *1 (N.D. Cal. Mar. 21, 2008) (decertifying Rule 23 Fair Debt Collections Practices Act class where no notice had been sent to class and no class members would be prejudiced). Similarly, there can be no concern about Plaintiff's collusion or self-dealing as AutoZone is not making any monetary award to Plaintiff as part of the settlement. *Cf. Hanzley v. Blue Cross of Western N.Y.*, 1989 WL 39427 (W.D.N.Y. Apr. 3, 1989)

(decertification not appropriate where remedial relief would benefit named plaintiffs but would be harmful to the class).  In addition, because Plaintiff's counsel is taking a substantial discount off the lodestar amount with respect to their attorneys' fees and expenses, there is no concern about collusion or self-dealing. *See*, *e.g.*, *Wexler v. AT&T Corp.*, 323 F.R.D. 128, 130-31 (E.D.N.Y. 2018) (Block, J.) (noting courts' fear of self-dealing by class counsel in connection with fees and the possibility of collusion between class counsel and the defendant).

6. Finally, as further support for decertification, AutoZone's modification of its challenged maintenance policy to more closely conform to the DOJ's recommendations could potentially moot a challenge to the adequacy of AutoZone's maintenance policy.

7. Finally, AutoZone also submits that additional bases for decertification exist due to the intervening decision by the Third Circuit, holding that the a parking lot "maintenance policy" claim alleged by Plaintiff arguably did not state a cognizable claim under the ADA and could not support certification of a class. *Mielo v. Steak 'n Shake*, 897 F.3d 467, 477, 477 n.10 (3d Cir. 2018). Further, on remand, the District Court in the same case held that the regulation under which Plaintiff premised his class action (28 C.F.R. §36.211) does not support a private right of action. *Mielo v. Steak 'N Shake*, 2019 WL 1330836 (W.D. Pa. Mar. 25, 2019).  These intervening decisions, if accepted by the Court, could further justify decertification.  But the Court need not reach these issues to conclude that decertification is appropriate here.

Based on the above Findings of Fact and Conclusions of Law, the Court concludes and ORDER that the class certified by the Certification Order should be decertified.

SO ORDERED:

Dated:  March 31, 2021

_____/S/  Frederic Block_____
Judge Frederic Block
United States District Judge